In re:  MICHAEL BROWN RICHESIN,                    No. 7-04-10884 MR

      Debtor.
_____

UNITED STATES TRUSTEE,

      Plaintiff,

v.                                                    Adversary Proceeding No. 06-1212 M

MICHAEL BROWN RICHESIN,

      Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court held a trial on the merits of this adversary proceeding objecting to the discharge of Defendant Michael Brown Richesin ("Debtor") under 11 U.S.C. § 727(a)(2)(A) and (4) and took the matter under advisement. The focus of this adversary proceeding to deny Debtor's discharge is Debtor's interest in and connection to Lomas Auto Mall, Inc. ("LAM, Inc."). Plaintiff asserts that Debtor's failure to disclose in his statements and schedules that he served as an officer of LAM, Inc. when, in fact, he represented himself to third parties as president and owner of LAM, Inc. from at least 2001 until July of 2004, constitutes a knowing and fraudulent statement in violation of 11 U.S.C. § 727(a)(4)(A). Plaintiff also contends that Debtor's statements at the creditor's meeting and in his statements and schedules regarding his relationship to and interest in LAM, Inc., including his representation that he never owned any stock in LAM, Inc., constitute false oaths within the meaning of 11 U.S.C. §727(a)(4)(A). Finally, Plaintiff asserts that Debtor transferred his stock in LAM, Inc. to his brother, Donald Richesin, within one year prior to the filing of his bankruptcy petition with the intent to hinder,

1

delay, or defraud creditors and the trustee, or otherwise concealed his interest in LAM, Inc. in violation of 11 U.S.C. § 727(a)(2)(A).

Upon review of the evidence and testimony, the Court finds that the Debtor's failure to disclose his relationship to LAM, Inc. and to the trade name, Lomas Auto Mall, in his statements and schedules constitutes a knowing and willful omission sufficient to deny the Debtor's discharge under 11 U.S.C. § 727(a)(4)(A). Though unnecessary to the disposition of this matter,[1] the Court further finds that there is insufficient evidence to support a denial of discharge under 11 U.S.C. § 727(a)(2)(A). In reaching this determination the Court enters the following findings of fact and conclusions of law in accordance with Rule 7052, Fed.R.Bankr.P.

## FINDINGS OF FACT

1. Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on February 10, 2004.

2. Debtor converted his case to one under Chapter 11 on March 30, 2005, after the Court entered an order denying confirmation of Debtor's Chapter 13 plan and determining that Debtor was ineligible for relief under Chapter 13 under 11 U.S.C. § 109(e). *See* Order Determining that Debtor is Ineligible for Chapter 13 Relief Under 11 U.S.C. § 109(e) - Docket # 71 and Order Granting Debtor's Motion to Convert Chapter 13 Proceeding to Chapter 11 Proceeding Pursuant to 11 U.S.C. §1307(d) and Bankruptcy Rule 1017(f) - Docket # 74.

---

[1]*See In re DeVoll,* 266 B.R. 81, 98 (Bankr.N.D.Tex. 2001) ("If one any ground for a denial of discharge is established, the Court does not need to decide the propriety of any of the other grounds.")(citing *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 177 (5th Cir. 1992)(remaining citation omitted)).

2

3.  Debtor moved to convert his Chapter 11 proceeding to Chapter 7 and the case converted to Chapter 7 on July 7, 2006. *See* Order Granting Debtor's Motion to Convert Chapter 11 Proceeding to Chapter 7 Proceeding Pursuant to 11 U.S.C. § 1112(a) - Docket # 119.

4.  Debtor filed his initial statements and schedules on March 5, 2004, and filed amended schedules on July 28, 2006 following the conversion of his case to Chapter 7.  *See* Docket # 8 and Docket # 123.

5.  Debtor's statements and schedules, and the amendments to his statements and schedules were signed under penalty of perjury.

6.  Debtor's Schedule B lists a 100% ownership interest in MJR Enterprises, Ltd. and a 100% ownership interest in The Car Company, Inc., but lists no ownership interest in LAM, Inc.

7. Debtor's Schedule I identifies The Car Company, Inc. as Debtor's occupation/employer.[2]

8.  The trade name Lomas Auto Mall is not listed on the Debtor's petition in the space designated for "All Other Names used by the Debtor in the last 6 years (include married, maiden, and trade names)."

9.  Debtor's Statement of Financial Affairs, Item 14, which requests a list of "all property owned by another person that the debtor holds or controls" is checked "None."

10.  Debtor's Statement of Financial Affairs, Item 18., which requests identification of

---

[2]The United States Trustee concedes that Debtor's employment by LAM, Inc. as its general manager was disclosed in the Debtor's statements and schedules.  *See* U.S. Trustee's Proposed Findings of Fact and Conclusions of Law, ¶¶ 7 and 8 (Docket # 24).   But Debtor's Schedule I, as amended, continues to reflect The Car Company, Inc. as his employer.  (*See* Case No. 7-04-10884 MR, Docket # 25, and Docket # 123).

3

the names, addresses, taxpayer identification number, nature of the business, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or self-employed professional within the six years preceding the commencement of the bankruptcy case, or in which the debtor owned 5% or more of the voting or equity securities identifies the following businesses: 1) Michael B. Richesin, d/b/a A & J; 2) MJR Enterprises, Ltd., d/b/a The Car Company; 3) The Car Company dba Property Investment; and 4) The Car Company, Inc.

11. Debtor's statements and schedules do not disclose any ownership interest in or affiliation with LAM, Inc. Nor do the Debtor's statements and schedules disclose the business or trade name Lomas Auto Mall.

12. Debtor operated a used car business located at 7500 Lomas Blvd. from at least 2001 to the present. The Debtor has consistently referred to the business as Lomas Auto Mall even when the business operated under the corporate name The Car Company, Inc.

13. Bank account number 6115943 held at New Mexico Bank & Trust identifies the account owner as The Car Company, Inc. d/b/a Lomas Auto Mall. *See* Exhibits 5(a), 5(b), 5(c), 6(a), 6(b), 6(c) and 7.

14. Bank account number 6147854 held at New Mexico Bank & Trust identifies the account owner as Lomas Auto Mall. *See* Exhibits 11(a), 11(b), 11(c), and 12.

15. As of December 31, 2005, bank account number 6147854 for Lomas Auto Mall reflects a balance of $417.72. *See* Exhibit 11(a).

16. Bank account number 6115943 for The Car Company, Inc. d/b/a Lomas Auto Mall reflects transfers in February of 2006 to bank account number 6147854 totaling $64,000.00. *See*

4

Exhibit 6(c).

17.  The bank account statement for Lomas Auto Mall account number 6147854 reflects activity (deposits and withdrawals) of over $1,000,000.00 for the month ending February 28, 2006.  *See* Exhibit 11(c).

18.  A Data Account Summary for LAM, Inc. Inventory Account at New Mexico Bank & Trust dated June 6, 2001 for account number 6118343 includes a Corporate Banking Resolution signed by Michael Richesin on behalf of LAM, Inc.  *See* Exhibit 15(a).   A second Data Account Summary for LAM, Inc. Inventory Account at New Mexico Bank & Trust dated March 14, 2001 includes the Certificate of Incorporation for The Car Company, Inc.

19.  Debtor uses the name Mickey Richesin as well as Michael Richesin.

20.   A Data Account Summary for Lomas Auto Mall account number 6147854 dated August 22, 2005 was signed by Mickey Richesin.   A second Data Account Summary for Lomas Auto Mall account number 6147854 dated May 8, 2006 was signed by Mickey Richesin on behalf of LAM, Inc.

21.  A Representative Authorization Letter dated July 30, 2004 for Ruben Baca to represent Lomas Auto Mall at Auction Access was signed by Mickey Richesin as "owner" of Lomas Auto Mall.  *See* Exhibit 17.   The dealer identification number is 511660.  *Id.*

22.  A Dealer Information Sheet for Albuquerque Auto Auction dated February 15, 2001 identifies Lomas Auto Mall as a new business, with State Dealer No. 1659.  The owner is identified as Mickey Richesin.  The account number at New Mexico Bank & Trust is 6115943. *See* Exhibit 19.

23.  A Vehicle Dealer or Dismantler Bond dated October 26, 1999 for Lomas Auto Mall

5

was signed by Mickey Richesin as principal of the corporation. *See* Exhibit 20.

24. A Vehicle Dealer or Dismantler Bond dated April 1, 2003 for Donald Richesin dba Lomas Auto Mall was signed by Donald Richesin as principal of the corporation. *See* Exhibit 24.

25. A Vehicle Dealer or Dismantler Bond dated June 24, 2004 for Lomas Auto Mall was signed by Michael Richesin as "owner/president." *See* Exhibit 27.

26. The license number for Lomas Auto Mall issued by the New Mexico Taxation & Revenue Department Motor Vehicle Division is 1659. *See* Exhibit 43.

27. The license number for The Car Company, Inc. issued by the New Mexico Taxation and Revenue Department Motor Vehicle Division is 1230. *See* Exhibit 44.

28. A Floor Plan Availability Report sent by Duke City Finance Co. To Albuquerque Auto Auction dated April 10, 2003 references Mickey Richesin d/b/a The Car Company, Inc. And The Lomas Auto Mall. *See* Exhibit 21.

29. Auction Access summary sheet identifies the name of the business as Lomas Auto Mall, and lists bank account number 6115943. *See* Exhibit 22.

30. Corporate information maintained by the New Mexico Public Regulation Commission (NMPRC) reflects that LAM, Inc. was incorporated on November 30, 1999, with a principal and mailing address of 7500 Lomas NE. *See* Exhibit 13. Debtor is identified as president of LAM, Inc. on records maintained by the NMPRC. *Id.*

31. An Application for Employer Identification Number, Form SS-4 for LAM, Inc. reflects that business was started on July 1, 2005. *See* Exhibit 14. Donald Richesin is identified on the form as the "principal officer, general partner, grantor, owner or trustor." *Id.*

6

32.  Records from Albuquerque Auto Auction reflect significant transactions under the name Lomas Auto Mall for the year 2005.  *See* Exhibit 23.

33.  Maxine Vega, employed at Albuquerque Auto Auction since 2002, testified that she was not familiar with the business name The Car Company, Inc., and that the account at Albuquerque Auto Auction was "reactivated" sometime in 2002 under the name Lomas Auto Mall as a corporate account through Michael Richesin, who signed paperwork for Lomas Auto Mall as its owner or president.   She also testified that she does not believe the records of Albuquerque Auto Auction reflect the name LAM, Inc.

34.  At the meeting of creditors held August 14, 2006 pursuant to 11 U.S.C. § 341, Debtor testified that The Car Company, Inc. no longer does business, that LAM, Inc. operates the business at 7500 Lomas, that Debtor is employed by LAM, Inc. as its general manager and receives his compensation from LAM, Inc.   Debtor also testified at the creditor's meeting and has consistently maintained that his brother, Donald Richesin, owns LAM, Inc., that the Debtor never owned an interest in LAM, Inc., and that Donald Richesin has been the owner since its inception in 1999.  *See* Exhibit 34.

35.  Donald Richesin also consistently stated that he is the owner of LAM, Inc. and has been since its inception. *See* Exhibit 37 - Transcript of Donald Richesin's Deposition dated June 21, 2007.   He also stated that he knows very little about the day to day operations of LAM, Inc. and that his brother, Michael Richesin runs the business.  *Id.*  Donald Richesin does not have any of the corporate records for LAM, Inc.  *Id.*

36.  Debtor initially testified at the creditor's meeting that he had never been an officer of LAM, Inc., but later corrected himself by stating that he had acted as president of LAM, Inc. and

served as its president for a short time after LAM, Inc. was incorporated.

37. Debtor ceased active business operations of The Car Company, Inc. in December of 2005 or January 2006.

38. In January of 2006, Debtor transferred operations of The Car Company, Inc. to LAM, Inc.

39. The federal tax return filed for LAM, Inc. for 2006 reflects negative taxable income. *See* Exhibit E. No tax returns for LAM, Inc. for years prior to 2006 were offered into evidence. Manny Ortiz, the accountant hired to prepare tax returns for The Car Company, Inc., also prepared the tax return for LAM, Inc. In 2006, and testified that as far as he knew no tax returns were prepared for LAM, Inc. until 2006.

DISCUSSION AND CONCLUSIONS OF LAW

A. 11 U.S.C. § 727(a)(4)  - False Oaths

Under 11 U.S.C. § 727(a)(4)(A), a debtor will be denied a discharge upon a showing that the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."   In order to prevail under 11 U.S.C. § 727(a)(4), the objector must prove by a preponderance of the evidence "(1) that the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew the statement was false; (4) that the debtor made the statement with intent to defraud; and (5) that the statement related materially to the debtor's bankruptcy case." *In re Splawn,* 376 B.R. 747, 759-760 (Bankr.D.N.M. 2007)(citing *In re Eigsti,* 323 B.R. 778, 783-784 (Bankr.M.D.Fla. 2005)).   Stated more simply, "[t]o trigger section 727(a)(4)(A), the false oath must relate to a material matter and must be made willfully with intent to defraud." *Job v. Calder (In re Calder),* 907 F.2d 953, 955 (10th Cir. 1990)(per

8

curiam)(citing 4 Collier on Bankruptcy ¶ 727.04[1] at 727-54 to 57 (15th ed. 1987)). A false statement or omission is material for purposes of 11 U.S.C. § 727(a)(4) "'if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property.'" *In re Davison,* 296 B.R. 841, 847 (Bankr.D.Kan. 2003), *aff'd,* 2004 WL 2852352 (10th Cir. BAP 2004)(quoting 6 Collier on Bankruptcy ¶ 727.04[1][b] at 727-40 (Alan N. Resnick, et al., eds., 15th ed. rev. 2003)). Fraudulent intent for purposes of 11 U.S.C. § 727(a)(4) can be shown "either by establishing that the debtor engaged in a pattern of concealment, or that the debtor possessed a reckless indifference to the truth." *In re Unger,* 333 B.R. 461, 468 (Bankr.M.D.Fla. 2005)(citing *Eigsti,* 323 B.R. at 784).

False information contained in a debtor's statements and schedules, as well as omissions therefrom, can constitute false oaths within the meaning of 11 U.S.C. § 727(a)(4). *Splawn,* 376 B.R. at 760 (citations omitted); *In re Lindemann,* 375 B.R. 450, 469 (Bankr.N.D.Ill. 2007) ("A false oath may include a knowing and fraudulent omission.")(citations omitted). Statements made under oath at a creditor's meeting can also constitute false statements within the meaning of 11 U.S.C. § 727(a)(4). *Splawn,* 376 B.R. at 760; *Lindemann,* 375 B.R. at 469. Nevertheless, a debtor's discharge will not be denied under 11 U.S.C. § 727(a)(4) when the omissions are due to an honest mistake. *See In re Lee,* 309 B.R. 468, 477 (Bankr.W.D.Tex. 2004)(noting that "[a] discharge cannot be denied when items are omitted from the schedules by honest mistake.")(citing *Beaubouef*, 966 F.2d at 178 (remaining citation omitted)).

The United States Trustee asserts that the Debtor's failure to list his position as officer, director, or managing executive of LAM, Inc. in response to Item 18. on the Statement of

9

Financial Affairs constitutes a false oath within the meaning of 11 U.S.C. § 727(a)(4). The United States Trustee asserts further that the Debtor testified falsely at his creditor's meeting with regard to his connection to LAM, Inc. and that he falsely stated that he never owned any stock of LAM, Inc.

Failure to Disclose Stock Interest in LAM, Inc.

No evidence was presented that any stock of LAM, Inc. was issued to the Debtor. Both the Debtor and Donald Richesin consistently stated that the stock of LAM, Inc. was originally issued to Donald Richesin. The stock certificate entered into evidence reflects that it was issued to Donald Richesin. Thus, at least technically, Debtor did not have a ownership interest in LAM, Inc. which would require disclosure on the Debtor's statements and schedules. Discharge will not, therefore, be denied under 11 U.S.C. § 727(a)(4) based on the Debtor's alleged failure to list an ownership interest in LAM, Inc.

Failure to Disclose Status as Officer of LAM, Inc.

Debtor did not disclose that he served as an officer of LAM, Inc. in his statements and schedules, when the evidence indicates that he served as president of LAM, Inc., and signed documents as principal or owner of LAM, Inc. within one year of the date of the petition. (*See, e.g.,* Exhibit 13). When questioned at the meeting of creditors, Debtor stated that he had served as president of LAM, Inc. for a period of time after its incorporation, and confirmed that as of the date of the creditor's meeting, he served as LAM, Inc.'s general manager, controlling its day to day operations. He also confirmed that LAM, Inc. was his employer, though his Amended Schedule I filed upon the conversion of his bankruptcy case to Chapter 7 still reflected The Car Company, Inc. as his employer. And although counsel for the Debtor indicated at the creditor's

10

meeting that Schedule I would be further amended to reflect that correction, no subsequent

amendment was ever filed. *See,* Exhibit 34, Transcript from § 341 Meeting held August 14,

2006.[3]  Failure to amend schedules and statements once omissions or misstatements have been

identified is some circumstantial evidence of intent.  *See In re Caldwell,* 101 B.R. 728, 739

(Bankr.D.Utah 1989) (noting that even when the court believes that "the omission of the assets

was unintentional, the failure to amend promptly once the omission was discovered is an indicia

of fraudulent intent.").[4]

        The evidence shows that the Debtor often held himself out to be the owner and/or

president of LAM, Inc. as suited his business needs.    Records maintained by the State of New

Mexico Public Regulation Commission reflect that the Debtor served as president of LAM, Inc.

as of February 19, 2004.  *See* Exhibit 13.    The evidence also indicated, however, that LAM, Inc.

may not have been actively conducting business as of the date of the filing of the petition, and

Debtor conceded at his creditor's meeting that he served as president of LAM, Inc. for a short

time.    Based on these facts, the Court cannot infer fraudulent intent based solely on Debtor's

---

[3]Exhibit 34, p. 11, lines 16-25, and p. 12, lines 1-2:

> Q      But your Schedule I shows that you have a $4,000 salary from The Car
>            Company, Inc., I believe.
> A      Well, The Car Company is no longer operating as a business.
> Q      So when did you go to work for Lomas Auto Mall, Inc.?
> A      I guess that would be this year.
>          Mr. Davis:   I guess that's a mistake we've made on Schedule I when we

filled this out because we just took his old Schedule I and changed the numbers and I didn't
realize it said The Car Company on there.  So I think that's a mistake we made.  I'll change that.

[4]*See also, Friedman v. Alfonso (In re Alfonso),* 94 B.R. 777, 778 (Bankr.S.D.Fla. 1988)
(noting that "even though schedules are filed in haste, a debtor's failure to promptly amend the
schedules is considered a reckless indifference to the truth which is the equivalent of
fraud.")(citing *In re Nazarian*, 18 B.R. 143 (Bankr.D.Md.1982)(remaining citation omitted)).

11

failure to disclose the fact that he served as an officer of LAM, Inc. *Cf. Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1294 (10th Cir. 1997) (refusing to infer fraudulent intent based on an inadvertent mistake where debtor promptly brings his omission to the attention of the trustee at his creditor's meeting). But as explained more fully below, the cumulative effect of this omission, coupled with his failure to disclose his relationship with LAM, Inc. and failure to disclose the trade name Lomas Auto Mall when it is clear that the Debtor controlled every aspect of these business enterprises and consistently used the name Lomas Auto Mall in his business dealings indicates a knowing and willful failure to make full and complete disclosure of the Debtor's business operations sufficient to deny the Debtor's discharge under 11 U.S.C.§ 727(a)(4)(A).

### Failure to Disclose Connection to LAM, Inc.; Failure to Disclose Trade Name Lomas Auto Mall

The United States Trustee contends that the Debtor falsely testified at the meeting of creditors by stating that he never held an ownership interest in LAM, Inc. It is clear from the evidence presented that the Debtor signed documents on behalf of Lomas Auto Mall, without reference to The Car Company, Inc., and held himself out to be its owner, president, or principal. *See, e.g.,* Exhibit 18 - AuctionACCESS Authorization and Guaranty signed by Michael Richesin as President of Lomas Auto Mall). In weighing this evidence, it is problematic that the name Lomas Auto Mall is used consistently, even when the business appears to be conducted by The Car Company, Inc. (*See, e.g.,* Exhibit 7 - Bank Account for The Car Company, Inc. d/b/a Lomas Auto Mall; Exhibit 19 - Dealer Information Sheet identifying Lomas Auto Mall as the Dealership, but listing the bank account number for The Car Company, Inc.; Exhibit 29 - Application for Dealer/Dismantler License listing Lomas Auto Mall d/b/a The Car Company,

Inc.)

It is undisputed that LAM, Inc. was incorporated in 1999 and is, in fact, a corporation separate and distinct from The Car Company, Inc. (*See* Exhibit 42 - Articles of Incorporation for LAM, Inc.; Exhibit 43 - New Mexico Motor Vehicle Division Retail Dealer License Number 1659 for Lomas Auto Mall; Exhibit 44 - New Mexico Motor Vehicle Division Retail Dealer License Number 1230 for The Car Company, Inc.).   It is also clear that even while operating under the corporate name The Car Company, Inc., the Debtor used the trade name Lomas Auto Mall.   Yet the Debtor did not disclose the trade name Lomas Auto Mall in his statements and schedules.

"The accuracy and completeness of information contained in a debtor's schedules and statement of financial affairs is essential to the successful administration of the case." *DeVoll,* 266 B.R. at 98 (citing *In re Lightfoot,* 152 B.R. 141, 149 (Bankr.S.D.Tex. 1993))*.*  For this reason, "any deliberate omissions may result in the denial of a discharge." *Id.*   Moreover, neither value nor detriment to creditors is relevant to the determination of whether the omission is "material" within the meaning of 11 U.S.C. § 727(a)(4). *See DeVoll,* 266 B.R. at 98 ("'[i]n determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors.  The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, *or* concerns the discovery of assets, business dealings, *or* the existence and disposition of his property.'")(quoting *Beaubouef,* 966 F.2d at 177 (emphasis added)).  *See also Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984) (per curiam)(same)(citing *In re Steiker,* 380 F.2d 765, 768 (3rd Cir. 1967)).

13

The evidence before the Court shows that the Debtor loosely treated his relationship to and interests in The Car Company, Inc. (which often did business as Lomas Auto Mall and conducted its business at 7500 Lomas Blvd.), as opposed to LAM, Inc. (which was incorporated in 1999, and also ultimately conducted its business at 7500 Lomas Blvd.), by holding himself out to third parties as president and/or owner of The Car Company, Inc., LAM, Inc., or Lomas Auto Mall as suited his business needs. The question is whether his failure to list the trade name Lomas Auto Mall or his relationship to that business is sufficient to deny the Debtor's discharge under 11 U.S.C. § 727(a)(4).

In *DeVoll,* the Court concluded that the Debtor's failure to disclose "a wide variety of things, including a trade name under which he had done business . . . his relationship or affiliation with several other entities" along with other failures to disclose or properly describe certain assets, including assets held for other companies, coupled with the debtor's testimony inconsistent or contradicted by other documentary evidence was sufficient to deny the debtor's discharge under 11 U.S.C. § 727(a)(4). 266 B.R. at 98-100. The *DeVoll* Court was troubled by the "extensive omissions" and "repeatedly inconsistent sworn testimony" and, therefore, concluded that the debtor had been, at best, recklessly indifferent to the truth, but more than likely intended to frustrate creditor's attempts to understand the debtor's business dealings and estate assets. *Id.* at 99.

Similarly, in *In re Jamison,* 329 B.R. 743, 753 (Bankr.D.Kan. 2005), the court had little trouble concluding that the debtor's failure to list multiple businesses, including an auto repair and auto sales business he claimed were owned by his daughters, and a dent repair and auto trim business in which the debtor was a one-time partner, and his "failure to provide the details of his

14

'self-employed' income and expenses on Schedule I and J [was] another attempt to conceal his business operations" and constituted false oaths sufficient to deny the debtor's discharge under 11 U.S.C. § 727(a)(4). The debtor failed to list any trade names in the field for disclosing trade names on his petition, and answered "none" in response to Question 18 on the statement of financial affairs which requests information concerning any businesses in which the debtor may be involved. *Id.* at 746. The Court concluded that the debtor "conducted himself as the 'front man' for each of the businesses" noting that the debtor had signatory power and signed checks on the business bank accounts. *Id.* at 749.

In this case, unlike the cases cited above, the Debtor's statements and schedules are not replete with multiple omissions or misstatements relating to several different assets. The Debtor would have the Court conclude that because, technically, there is only one omission in response to Item 18. with respect to Debtor's position as an officer of LAM, Inc., an admittedly dormant company as of the petition date, that the omission was an inadvertent mistake from which the inference of fraud cannot be drawn. Debtor further points to the minimal value of LAM, Inc. as evidence that the Debtor had no incentive to lie on his statements and schedules. But while the minimal value of an asset may indicate a lack of fraudulent intent under 11 U.S.C. § 727(a)(2)(A)[5], it is not relevant to an inquiry under 11 U.S.C. § 727(a)(4).[6] Moreover, as noted

---

[5]*See In re Dennis,* 330 F.3d 696, 702 (5th Cir. 2003) (noting that while "a transfer to a relative might suggest intent [to defraud], a minimal transfer just as strongly suggests a lack of intent[ ]" and concluding that, "[g]iven the low value of the bonds, . . . the bankruptcy court did not clearly error by finding that Dennis lacked actual intent to defraud.")

[6]*Unger,* 333 B.R. at 469 (stating that "[u]nder § 727(a)(4), 'the debtor has an obligation to disclose the existence of all assets, even if they are worthless or unavailable. (Citation omitted.) Debtors cannot escape disclosure under this subsection by claiming that assets omitted are worthless . . . .'")(quoting *In re Ingersoll,* 124 B.R. 116, 122 (M.D.Fla. 1991)); *In re Spitko,*

by the Court in *DeVoll,* the question on the statement of financial affairs calling for the debtor to

list the names of all businesses in which he served as an officer, director, or managing executive

of a corporation, "is straightforward . . . . [and] cannot reasonably be interpreted to exclude

dormant entities or entities which a debtor believes have no value or assets."  266 B.R. at 99.

The *DeVoll* court, therefore, rejected debtor's contention "that he was not required to disclose is

interest or affiliation with several of the companies because they were not active companies, did

not business and/or had no assets," finding such argument "specious."  *Id.*

Because a debtor is unlikely to admit fraudulent intent, for purposes of 11 U.S.C. §

727(a)(4) fraudulent intent may be demonstrated based on the surrounding facts and

circumstances from which it may be inferred.[7]  "[E]ither a pattern of concealment and errors or

other conduct that suggests reckless indifference to the truth" will suffice to evidence by

circumstantial evidence an intent to defraud under 11 U.S.C. § 727(a)(4).  *In re Senese,* 245

B.R. 565, 575 (Bankr.N.D.Ill. 2000)(citations omitted).  And while the creditor bears the

ultimate burden of proof under 11 U.S.C. § 727(a)(4), once the creditor has demonstrated an

omission or false statement, the burden shifts to the debtor to show that the omission was the

result of an honest mistake or to otherwise provide a credible explanation for the false

statement.[8]  Ultimately, determinations of whether discharge should be denied under 11 U.S.C. §

---

357 B.R. 272, 312 (Bankr.E.D.Pa. 2006)("[T]he debtor cannot excuse the omission by claiming
the property not disclosed was of little or no value to the bankruptcy trustee.")(citation omitted).

[7]*Spitko,* 357 B.R. at 314 ("liability under section 727(a)(4) requires that the false
statement was made fraudulently, not inadvertently" so that "fraudulent intent may be inferred . .
. . 'from all the facts and circumstances of a case.'")(quoting *Williamson v. Fireman's Fund Ins.
Co.,* 828 F.2d 249, 252 (4th Cir. 1987)(remaining citations omitted)).

[8]*Caldwell,* 101 B.R. at 735 (finding that once objecting party demonstrated that the
documents filed with the court were inaccurate, the burden fell on the debtor "to convince the

16

727(a)(4) often depend upon the demeanor and credibility of the debtor in explaining the reasons for failing to make full and complete disclosures.[9]

The United States Trustee has shown that the Debtor's statements and schedules contained omissions regarding his connection to Lomas Auto Mall and/or LAM, Inc. sufficient to meet the threshold burden under 11 U.S.C. § 727(a)(4), so that the Debtor must come forward to provide an adequate explanation or excuse for the deficiencies. At trial, Debtor explained that because LAM, Inc. was not actively doing business, he was not thinking about that corporation when filling out his statements and schedules so that any omission was completely inadvertent, and that, because he never owned any stock in LAM, Inc., he had no duty to disclose any ownership interest in LAM, Inc. Debtor further justified his omission by stating that LAM, Inc. has never made a profit. Finally, Debtor testified that he thought of his business, The Car Company, Inc. and LAM, Inc. as "doing business *at* Lomas Auto Mall" since the business operations were conducted at 7500 Lomas Blvd.

---

court that his excuses negate the omissions."); *In re Brenes,* 261 B.R. 322, 334 (Bankr.D.Conn. 2001) ("Once the objecting creditor meets its burden of proof and has produced persuasive evidence of a false statement, the burden of production shifts to the debtor to come forward with some credible explanation for a false statement on the schedules.") (citations omitted); *Poolquip-McNeme, Inc. v. Hubbard (In re Hubbard),* 96 B.R. 739, 742 (Bankr.W.D.Tex. 1989)("[B]ecause a court may infer knowledge and fraudulent intent from the existence of a sworn false statement, once a sworn statement is shown to be false, the burden to prove that the statement or omission was an honest mistake shifts to the debtor.")(citations omitted).

[9]*In re West,* 328 B.R. 736, 750 (Bankr.S.D.Ohio 2004)("Often, resolution of the question of whether a false statement was made with intent to deceive will turn on the Court's assessment of the demeanor and credibility of the debtor.")(citing *Groman v. Watman (In re Watman)*, 301 F.3d 3, 8 (1st Cir.2002)); *See also, Williamson,* 828 F.2d at 252 (noting that "[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor, deference to the bankruptcy court's factual findings is particularly appropriate.")

17

It is extremely difficult for the Court to fathom how the Debtor's failure to list Lomas Auto Mall and or LAM, Inc. was inadvertent, given the fact that the name Lomas Auto Mall was used extensively on the bank accounts, dealer/dismantler bonds, and auction authorization statements, whether such documents technically related to The Car Company, Inc. or LAM, Inc. But the benefit of failing to disclose LAM, Inc. and/or Lomas Auto Mall is clear: post-petition, Debtor was able to start anew under LAM, Inc. outside the purview of the Bankruptcy Court. And because neither LAM, Inc. nor the trade name Lomas Auto Mall was disclosed in Debtor's statements and schedules, potential creditors of LAM, Inc. would not be reluctant to do business based on the perception that the business was connected to a bankruptcy.

Elsewhere in Debtor's statements and schedules, Debtor listed trade names for other companies, such as MJR Enterprises, Ltd d/b/a The Car Company; The Car Company d/b/a Property Investment, and listed A & J as a d/b/a for himself, individually. *See* Statement of Financial Affairs, Exhibit 2A. Yet when it suited the Debtor's needs, he failed to disclose Lomas Auto Mall as a d/b/a of The Car Company. Had the trustee and creditors known of the existence of LAM, Inc. and/or Lomas Auto Mall, they would have been able to ascertain the full extent of the Debtor's business operations. The evidence presented at trial indicates that even the Debtor was not particularly careful in keeping LAM, Inc. separate and distinct from Lomas Auto Mall. Indeed, the dealer dismantler bonds issued first to Michael Richesin, and later to Donald Richesin, which most clearly relate to LAM, Inc. were issued under the d/b/a Lomas Auto Mall. And the only account at Albuquerque Auto Auction was under the name Lomas Auto Mall. Debtor's explanation that these omissions were inadvertent are not credible. These surrounding facts and circumstances are sufficient for the Court to conclude that the United

18

States Trustee has met its burden under 11 U.S.C. § 727(a)(4).

B. 11 U.S.C. § 727(a)(2) - Transfer or Concealment of Property

Under 11 U.S.C. § 727(a)(2)(A), a debtor will be denied a discharge upon a showing, by a preponderance of evidence, that "the debtor, with intent to hinder, delay, or defraud a creditor . . . transferred, removed, . . . or concealed . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A); *Brown,* 108 F.3d at 1293 (preponderance of evidence standard). The objector must establish the following elements: "1) that a transfer of property occurred; 2) that the debtor owned the property transferred; 3) that the transfer occurred within one year of filing the petition; and 4) that the debtor had, at the time of the transfer, the intent to defraud a creditor." *In re Seay,* 215 B.R. 780, 789 (10th Cir. BAP 1997). Concealment within the meaning of 11 U.S.C. § 727(a)(2)(A) "consists of 'failing or refusing to divulge information to which creditors were entitled.'" *Lindemann,* 375 B.R. at 465 (quoting *Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein),* 299 B.R. 211, 229 (Bankr.N.D.Ill. 2003)). "A concealment will be found when a debtor purports to transfer an asset, making it appear as if she no longer owns it, but she in fact retains an interest in the asset." *Id.* (citing *Village of San Jose v. McWilliams,* 284 F.3d 785, 794 (7th Cir. 2002) and *Holstein,* 299 B.R. at 229)).

Nevertheless, in order "for a debtor to be denied a discharge for fraudulent concealment, the property allegedly concealed must be property of the debtor." *Spitko,* 357 B.R. at 300 (citing *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3rd Cir. 1993)). Injury to creditors as a result of the debtor's fraudulent concealment is irrelevant, but the objector must show that the debtor possessed the requisite subjective intent to defraud his or her creditors. *Id.* at 301 (citations

19

omitted).  *See also, Lindemann,* 375 B.R. at 466 ("Denial of discharge under this section [§

727(a)(2)(A)] requires proof of actual intent to hinder, delay, or defraud a creditor. . . . [but]

'[p]roof of harm is not a required element'" )(quoting *In re Smiley,* 864 F.2d 562, 569 (7th Cir.

1989)(remaining citations omitted)).

The United States Trustee asserts that Debtor transferred his stock in LAM, Inc. to his

brother Donald Richesin in March of 2003, less than one year prior to the filing of the Debtor's

bankruptcy petition, with the intent to hinder, delay or defraud creditors and the trustee.  Based

on the evidence and testimony presented at trial, the United States Trustee has failed to show by

a preponderance of the evidence that such transfer of property occurred.  Both the Debtor and

Donald Richesin maintained in their deposition testimony that the stock of LAM, Inc. was issued

directly to Donald Richesin.   Donald Richesin confirmed that he did not receive the stock

certificate until some years after LAM, Inc. was formed, but there is no evidence of any issuance

of stock in LAM, Inc. to the Debtor, nor of a subsequent transfer of the stock of LAM, Inc. from

the Debtor to Donald Richesin. *See* Exhibit 37 - Donald Richesin Deposition Transcript, p. 32.

And while it is clear that the Debtor exercised control over the day-to-day operations of LAM,

Inc., and that Donald Richesin had little, if any, knowledge of LAM, Inc.'s operations, the

Debtor's testimony that he served as LAM, Inc.'s general manager is consistent with these facts.

The Debtor's continuous control of LAM, Inc.'s business operations fails to prove that the

Debtor transferred an interest in LAM, Inc. to his brother.

The United States Trustee points to the change in the principal identified on the dealer

bond to Donald Richesin in 2003 as evidence of a change in ownership of LAM, Inc. from

Michael Richesin to Donald Richesin.   An earlier dealer bond issued in 1999 (Exhibit 20) was

issued to Mickey Richesin dba Lomas Auto Mall.   The dealer bond issued in 2003 (Exhibit 24)

was issued to Donald W. Richesin dba Lomas Auto Mall.   But while these bonds presumably

were issued for LAM, Inc., neither bond specifically identifies LAM, Inc., but rather, Lomas

Auto Mall as a "d/b/a."   Mickey Richesin confirmed at his creditors meeting that he served as

LAM, Inc.'s president for a short period following its incorporation in 1999.   The dealer bond

from 1999 is consistent with that testimony.

As analyzed above, there is insufficient evidence that Debtor held a stock ownership

interest in LAM, Inc.  Likewise, there is insufficient evidence of a transfer of an ownership

interest in LAM, Inc.  Because no transfer has been shown, the Court cannot conclude that a

concealment has occurred within the meaning of 11 U.S.C. § 727(a)(2)(A).

CONCLUSION

Denial of discharge under 11 U.S.C. § 727 must be "construed liberally in favor of the

debtor and strictly against the creditor." *Brown,* 108 F.3d at 1292 (citing *In re Aldman,* 541 F.2d

999, 1003 (2nd Cir. 1976)).   But because the purpose of the Bankruptcy Code is to provide an

honest debtor with a fresh start, its benefits and protections must not be extended to debtors who

perpetuate false oaths and statements in their schedules knowingly and with the intent to mislead

creditors and the trustee.   Section 727(a)(4) enforces the "debtor's duty of disclosure . . . to

ensure that the debtor provides reliable information to those who have an interest in the

administration of the estate."  *Lindemann,* 375 B.R. at 469 (citations omitted).  Based on the

evidence and testimony, the Court concludes that the Debtor's failure to fully disclose his

connection to LAM, Inc. and/or Lomas Auto Mall in his statements and schedules and at his

creditor's meetings constitute false oaths sufficient to deny the Debtor's discharge under 11

21

U.S.C. § 727(a)(4)(A), but that insufficient evidence of a transfer of the Debtor's property was presented to support denial of discharge under 11 U.S.C. § 727(a)(2)(A).

A judgment consistent with these findings of fact and conclusions of law will be entered.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

Alice Nystel Page
Attorney for Plaintiff
PO Box 608
Albuquerque, NM 87103

William F. Davis
Attorney for Defendant
6709 Academy NE, Suite A
Albuquerque, NM 87109